IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELDORD E. GRACE,                          )
                                          ) C.A. No. 6-1203
        Plaintiff,                        )
                                          )
            vs.                           )
                                          )
STARWOOD HOTELS &                         )
RESORTS WORLDWIDE, INC.,                  )
                                          )
        Defendant.

AMBROSE, Chief District Judge.


**OPINION AND ORDER**

**SYNOPSIS**

In this civil action, Plaintiff, proceeding pro se, claims that Defendant, his employer, discriminated against him based on race and gender, and then retaliated against him for complaining about the discrimination.   He purports to assert claims under Title VII of the Civil Rights Act, 42 U.S.C. 2000 e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. 951 et seq. ("PHRA"), as well as 18 U.S.C. §§ 1001 and 495.   Defendant has filed a Motion for Summary Judgment on all claims against it.[1]

For the following reasons, Defendant's Motion will be granted.

**OPINION**

**I. Facts**

The following facts are undisputed, unless otherwise indicated.  To the

---

[1]Defendant has also filed a Motion to Strike relating to certain of Plaintiff's submissions. That Motion is rendered moot by today's Order.

extent that either party failed to comply with Local Rule 56.1, or failed to comply with Fed. R. Civ. P. 56 by submitting properly sworn materials, nonconforming information has not been accepted as undisputed or as sufficient to create a factual dispute. Moreover, by way of background, I recite here several facts that are immaterial to summary judgment.

Defendant is a hotel and leisure company whose brands include Sheraton. Defendant operates approximately ten properties in Pennsylvania, and has approximately 2000 employees in Pennsylvania. Starwood manages the Sheraton Station Square hotel in Pittsburgh, Pennsylvania. Starwood has employed Plaintiff, an African-American male, as a banquet server at the hotel since September, 1999. Banquet servers are represented by a Union. Banquet servers do not work a regular schedule; the schedule varies according to the number and nature of banquet functions held at the hotel. Banquet servers are paid an hourly wage, and may work either tip-eligible "service hours" or tip-ineligible "late night" hours. Tip- ineligible hours of clean up or late night commence once the food is put away at the conclusion of food service.

The banquet manager on duty at the pertinent times was responsible for designating on the payroll when a server commenced clean up for late night hours on a particular evening. Banquet servers of various races complained about how the banquet manager administered banquet servers' payroll, and how he designated when their late night hours began.

The alleged instance of discrimination in this case occurred on a single evening, May 13-14, 2005, when the hotel hosted a high school prom event.

Plaintiff worked that event from 7:30 PM on the 13th until 5:03 AM on the 14th. The event was scheduled to run much later than typical banquet functions. A large staff of banquet servers, including Plaintiff, helped with the dinner portion of the prom. Four banquet servers, including Plaintiff, worked the after-prom after dinner had been cleared. The other three servers included one African-American male, and two Caucasian women. Plaintiff knew that he would be working the late-night hours, during the early morning of the shift. Plaintiff believes that all of the four banquet servers should have been switched to late-night hours during the early morning hours of the shift. Plaintiff alleges that the two women were left on service hours for the entire shift, while he and the other African-American male were switched to late night hours.[2] The banquet manager, however, testifies that all four banquet servers were removed from tip-eligible service hours to tip-ineligible late night hours during the early morning hours of May 14th, and were paid accordingly. He processed the payroll for the prom/after-prom event in accordance with his regular practices for switching employees from service hours to late night hours.

In September of 2005, Plaintiff lodged an internal complaint regarding, inter alia, the alleged disparity in tip-eligibility at the event in question. Leonard Tasselmyer, Defendant's area director of Human Resources, is responsible for

---

[2]At some point after May 14, 2005, Plaintiff avers that he had a conversation with one of the women on duty. Plaintiff represented to her that he had remained on tip-eligible duty during the entire event in question. Plaintiff states that the woman "looked surprised" and informed him that she had also stayed in the tip pool. Plaintiff, however, offers only his unsworn statement to support this. In accordance with my Order dated January 15, 2008, I cannot consider this statement in connection with Defendant's Motion. Although Defendant objects to this statement as inadmissible hearsay, I do not decide whether it is barred from consideration on that basis.

overseeing HR issues at the subject hotel.  His office is in the Poconos, and he is not involved with day-to-day operations at the hotel.  Tasselmyer and Plaintiff communicated several times.  Plaintiff asserts that they did not discuss Tasselmyer's consent to tape recordings of conversations; Defendant asserts that he told Plaintiff he did not consent to the recordings.  Plaintiff recorded conversations with Tasselmyer.  Plaintiff destroyed the tapes containing their full conversations, saving only several sentences that he believed might be evidence.  Plaintiff transcribed and now proffers portions of an October 4, 2005 conversation between the two men.  In its entirety, that transcript reads as follows:

> Tasselmyer - Here's my understanding what happened, the two on, apparently you and was it JJ?
>
> Grace - yes
>
> Tasselmyer - OK.  Punched out, and I guess that uh, you punch yourselves out, I mean nobody tells you to punch out.
>
> Grace - Right
>
> Tasselmyer - Ok, uh and the two on call did not punch out.  They stayed in the pool.

Tasselmyer testifies that he has no firsthand knowledge of the merits of any of Plaintiff's grievances, and that he deferred to the Director of Human Resources to investigate, and, if necessary, to address Plaintiff's claim.  Tasselmyer also testifies that he was repeating Plaintiff's claims to confirm that he understood the nature of Plaintiff's concerns and his version of events.

TALX UCM Services ("TALX") is in the business of administering unemployment compensation issues for employers throughout the country,

including Defendant.  TALX receives an automatic payroll feed from Defendant's payroll department.  TALX automatically translates the payroll information to TALX's unemployment computer program.  TALX then compares the payroll information on its computers to benefit charges for the individual employee listed on a form that TALX receives directly from the Unemployment Bureau (the "Bureau").[3]  If the comparison suggests that an employee may have received an overpayment of benefits, TALX sends a form letter to the Bureau requesting an investigation and credit adjustment should the Bureau ultimately determine that an employee received an overpayment of benefits.  TALX prepared and sent out a form letter, requesting an investigation into Plaintiff, on or about September 27, 2005, regarding a possible overpayment of benefits for the weeks between February 5, 2005 and July 30, 2005.[4]  TALX prepared and sent out the form letter in accordance with its regular business practices and had no knowledge that Plaintiff had complained to Defendant of discrimination.

Based on these same practices and procedures, TALX has sent such a form letter to the Bureau requesting investigation into the possible overpayment of unemployment benefits regarding dozens of Defendant's employees other than Plaintiff.  If the Bureau conducts a hearing to investigate a possible overcharge, representatives from TALX or Defendant never attend, because they consider the

---

[3]The parties refer to several different affiliates or offices of the Unemployment Compensation Bureau, such as the Unemployment Board and the Unemployment Service Center. Because the differences are immaterial to Defendant's Motion, and for purposes of clarity, I refer to them collectively as "the Bureau."

[4]The letter that Plaintiff submits dated 11/17/05 is the letter to Plaintiff from the Department of Labor and Industry, rather than the form letter from TALX to the Unemployment Compensation Service Center.

matter to be an administrative issue between the employee and the Bureau. Defendant does not send a representative to an unemployment hearing unless the Director of Human Resources wishes to contest a claimant's claim for benefits.

Every two weeks, Plaintiff submits to the Unemployment Compensation authorities a report of his earnings. He submits these earnings reports because he may be entitled to unemployment benefits if his earnings fall below a certain level. Plaintiff sometimes estimates his earnings on the reports, because he believes that Defendant does not always provide him with timely access to his exact earnings information. He made such guesses regarding his earnings at least back to February 2, 2005, due to the lack of timely access to earnings information. Every banquet server is affected by the alleged untimely release of earnings information, and all banquet servers at times need to submit an estimated report of earnings due to the timing of Defendant's release of wage information. The Union has filed grievances on behalf of all banquet servers regarding how timely and frequently Defendant provides earnings information.[5]

Subsequent to the TALX form letter, Plaintiff received an "Advance Notice" from the Bureau, dated Novmeber 17, 2005, in which the Bureau informed Plaintiff of the benefit weeks in question, and indicated that Plaintiff had the right to provide copies of his pay stubs for the Bureau's consideration. Plaintiff has kept his pay stubs from Defendant, including those from 2005, but did not

---

[5]In addition, Plaintiff submits a letter suggesting that Defendant is under investigation by Unemployment Compensation Tax Services relating to Defendant's compliance with Unemployment Compensation law.

submit them to the Bureau in response to the "Advance Notice." In accordance with their regular practice involving potential overpayments, neither TALX nor Defendant sent a representative to Plaintiff's unemployment compensation hearing. The referee issued a decision finding that Plaintiff received an overpayment of $5,113,00 in unemployment benefits. Plaintiff appealed the decision, and the referee's finding was affirmed. Other employees, including Caucasian employees, have had problems or disputes with the manner in which earnings are reported to the Bureau. Defendant and TALX followed the same methodology and practices with regard to Plaintiff's unemployment benefits as they have for all other employees of Defendant.

## II. APPLICABLE STANDARDS

### A. Summary Judgment

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990). The non-movant, therefore, is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432, 436 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. V. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995); Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Importantly, "if the non-movant's evidence is merely speculative, conclusory, 'or is not significantly probative, summary judgment may be granted.'" Raczkowski v. Empire Kosher Poultry, 185 Fed. Appx. 117, 118  (3d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

Pro se litigants are held to less stringent standards than trained counsel, and their submissions are to be liberally construed. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  Nonetheless, "all parties must follow the Federal Rules of Civil Procedure." Thomas v. Norris, No. 3:02-01854, 2006 U.S. Dist. LEXIS 64347, at *4 (M.D. Pa. Sept. 8, 2006).

### B. Discrimination and Retaliation

The now-familiar McDonnell Douglas paradigm is applicable to Plaintiff's discrimination claims under Title VII and the PHRA, as well as his retaliation claim. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) (Title VII), Moss v. Potter, No. 05-4021, 2006

U.S. App. LEXIS 9601, at *5 (3d Cir. Mar. 23, 2006) (retaliation); <u>Tomasso v. Boeing Co.</u>, 445 F.3d 702, 703 (3d Cir. 2006) ( PHRA).

In the context of <u>McDonnell Douglas</u> and a claim of discrimination, "the precise elements of a plaintiff's <u>prima facie</u> case may vary with the particular circumstances." <u>Waldron v. SL Indus., Inc.</u>, 56 F.3d 491, 494 n. 3 (3d Cir. 1995). In a disparate treatment claim, such as this one, a plaintiff must establish a <u>prima facie</u> case by presenting sufficient evidence to allow a factfinder to conclude that the defendant treated some people less favorably than others based on impermissible considerations. <u>Corbett v. Sealy, Inc.</u>, 135 Fed. Appx. 506, 509 (3d Cir. 2005).

To establish a <u>prima facie</u> case of retaliation, a plaintiff must show "(1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." <u>Witcher v. Sodexho, Inc.</u>, 247 Fed. Appx. 328, 2007 U.S. App. LEXIS 21404, at **6-7 (3d Cir. 2007) (quoting <u>Fasold v. Justice</u>, 409 F.3d 178 (3d Cir. 2005)).

If the plaintiff meets the burden of his <u>prima facie</u> case, then the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. <u>McDonnell Douglas</u>, 411 U.S. at 802. The employer satisfies its burden of production by introducing evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment action. <u>See St. Mary's</u>

Honor Center v. Hicks, 509 U.S. 502, 509, 125 L. Ed. 2d 407, 113 S. Ct. 2742, 2748 (1993). The employer need not prove that the tendered reason actually motivated its behavior, because the ultimate burden of proving intentional discrimination always rests with the plaintiff. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). I must accept Defendant's proffer without measuring its credibility. Hicks, 509 U.S. at 509.

Once the employer meets its relatively light burden, the burden of production returns to the plaintiff, who must now show that the employer's explanation is pretextual. Plaintiff may do this by pointing to "some evidence, direct or circumstantial, from which a factfinder could either 1) disbelieve the employer's articulated reasons; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco v. Runyon, 190 F. 3d 151, 166 (3d Cir. 1999).

More specifically, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered [sic] legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Evans v. Pennsylvania Power & Light Co.,98 Fed. Appx. 151, 155 (3d Cir. 2004). "In simpler terms, the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, 130 F.3d 1101, 1111 (3d Cir. 1997). Nevertheless, even if a plaintiff's evidence "permits a tenuous inference of pretext and, by extension, discrimination," the evidence may "be insufficient as a

matter of law to support a finding of discrimination." <u>Travis v. Board of Regents</u>

<u>of the Univ. of Tex. Sys.</u>, 122 F.3d 259, 263 (5th Cir. 1997).

## III. PLAINTIFF'S CLAIMS

### A. Race and Gender Discrimination

I first address Defendant's argument that Plaintiff cannot establish his

<u>prima facie</u> case, because the record lacks evidence of differential treatment.[6]  In

support of this argument, Defendant proffers the affidavit of the banquet

manager at the pertinent time, who testifies that he switched all four servers to

tip-ineligible duty during the early morning hours of the date in question, and

did so in accordance with his usual practice.  In contrast, Plaintiff offers his own

statement that one of the women told him that she had remained on tip-eligible

duty.[7]

Contrary to Defendant's suggestion, I am not permitted to consider the

manner of Plaintiff's questioning and its effect on the witness' credibility; nor

does Plaintiff's favorable personal opinion of the alleged wrongdoers negate the

possibility that they committed illegal acts.  For other reasons, however, I cannot

accept Plaintiff's averments at this stage.  "Federal Rue of Civil Procedure 56(e)

---

[6]Defendant also argues that Plaintiff's discrimination claim lacks evidence of pretext, because, <u>inter alia</u>, a collective bargaining agreement required it to remove all persons from the tip pool, as it claims was done in this case.  This argument, however, conflates the <u>prima facie</u> case with the next stage of <u>McDonnell Douglas</u>. This matter does not reach the pretext stage, as Defendant contends that the allegedly discriminatory act never occurred in the first instance.

[7]On this point, Plaintiff also offers the partial transcript of his conversation with Tasselmyer. Only evidence which is admissible at trial can be considered in ruling on a motion for summary judgment. <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 U.S. Dist. LEXIS 18324, at *25 (W.D. Pa. Aug. 26, 2005).   I have not ruled on the admissibility of the transcript, although I previously indicated concerns in that regard.  Moreover, the transcript is not offered in sworn form, as required by Rule 56. In any event, this evidence, even if admissible, is of such insignificant probative value under the circumstances that it cannot alone overcome summary judgment.

requires that affidavits and other materials submitted in support or opposition

to a motion for summary judgment be sworn or certified. Matters which are not

sworn or certified [or in statutorily prescribed form] should be stricken."

Tukesbrey v. Midwest Transit, 822 F. Supp. 1192, 1198 (W.D. Pa. 1993).  This

principle is not merely one of form over substance.  A party seeking judgment on

grounds that a particular fact is undisputed is entitled "to demand at least one

sworn averment of that fact before the lengthy process of litigation continues."

Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177

(1990).

 Moreover, "[t]hat the plaintiff is pro se is no reason to relax this

requirement."  Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 412 (E.D. Pa. 2000);

see also Watkins v. Cape May County Corr. Ctr., No. 04-4967, 2006 U.S. Dist. LEXIS

73623, at *16 n. 4 (D.N.J. Oct. 3, 2006); Small v. Lehman, 98 F.3d 762, 764 n.5 (3d Cir.

1996).  I did, however, relax the requirement by affording Plaintiff an additional

opportunity to submit appropriate materials in opposition to Defendant's

Motion.  Although Plaintiff's subsequent submissions complied with 28 U.S.C. §

1746, they do not relate to the factual allegations that are the subject of this suit,

and do not cure the defects in his original opposition papers.[8]

 As a result, it is undisputed that all four servers on the night in question

were removed from tip-eligible duty during the early morning hours of the date

in question, in accordance with Defendant's usual practices.   Under these facts,

---

[8]Instead, Plaintiff's compliant submissions relate to allegations of additional false earnings reports to the Bureau.   As explained in the body of this Opinion, for purposes of this Motion, I accept that Defendant failed to correct inaccurate information provided to the Bureau.

there is no genuine issue of material fact regarding differential treatment, and Defendant is entitled to judgment in its favor on Plaintiff's claims of gender and racial discrimination.

## B. Retaliation

Next, I address Defendant's argument that Plaintiff cannot meet his <u>prima facie</u> case of retaliation. Defendant argues that it treated Plaintiff no differently than other employees with respect to access to earnings information, and that Plaintiff had problems with access to wage information prior to engaging in protected activity.

I reject Defendant's position that Plaintiff cannot meet his <u>prima facie</u> case. There is no dispute that he engaged in protected activity by filing an internal grievance. Moreover, contesting an employee's right to unemployment compensation benefits may constitute an adverse action. <u>Petrunich v. Sun Bldg. Sys.</u>, 3:CV-04-2234, 2006 U.S. Dist. LEXIS 69043, at **26-28 (M.D. Pa. Sept. 26, 2006). Furthermore, taking the evidence in a light most favorable to Plaintiff, the Bureau was in possession of inaccurate wage and earning information that Defendant supplied to TALX and failed to correct.[9] Finally, temporal proximity

---

[9] I have taken care to peruse the figures that Plaintiff has offered the Court, and will likewise take care to explain to the parties the reasons that I cannot treat them conclusively at this stage. In the first instance, the figures are not readily reconciled, and their significance is not evident. For example, Plaintiff submitted purported "Evidence of Forgery," in the form of what appear to be computer-generated printouts from the Bureau of reported wages and other data of unknown significance and origin. To those printouts, Plaintiff has added several handwritten notations, reading "This figure was forged. illegally altered." I will select one date by way of example. The printout states, "Clmt reports wages for cwe 05/06/18 $1329.86 for emp 01"; Plaintiff, in his UC appeal, stated that for the same date, he earned $435.04 and "they reported" $588.06; the Referee's decision states that $425 was reported, and $588 was correct; a check from Defendant to Plaintiff dated 6/17/05 was made in the amount of $1,158.75, which is also stated in Defendant's payroll records as Plaintiff's net pay; and the TALX letter lists wages earned for 6/18/05 as $587.03. TALX reports "wages earned" to the Bureau as representing an average wage over a two-week

may be sufficient to establish causation at this initial stage.  E.g., Witcher, 2007 U.S. App. LEXIS 21404, at *7.   In this case, Plaintiff filed his electronic grievance on or about September 5, 2005.  Some of the allegedly retaliatory conduct followed the TALX report, which was sent to Unemployment Compensation Service Center on September 30, 2005.  Again viewing the facts in a light most favorable to Plaintiff, I will deem this temporal relationship sufficient.

Plaintiff's claim, however, fails in the subsequent stages of the McDonnell Douglas analysis.  The burden shifts to Defendant to articulate a legitimate reason for its actions.  Defendant has done so, by establishing that its conduct with respect to Plaintiff was in accordance with its regular practice, and that it never sends representatives to unemployment hearings because it considers the matter to be an administrative matter between the employee and the Unemployment Bureau.   Further, the undisputed facts demonstrate that TALX receives automatic feeds from Defendant's payroll; that TALX prepared and sent the report without knowledge of the Plaintiff's complaint; and, importantly, that both TALX and Defendant handled Plaintiff's unemployment benefits issues no differently than they handle those of other employees.  Defendant also establishes that it treated Plaintiff the same, with respect to access to wage information, as other employees.

The burden shifts next to Plaintiff, who must come forward with evidence

---

period. In the first instance, Plaintiff's statements in this regard do not comply with Rule 56.  That aside, however, the parties have failed to supply me with information sufficient to determine or assess the relative accuracy of each set of figures, and the significance thereof.

Additionally, I note that Plaintiff asserts that the figures that he himself reported to the Bureau were, somehow, illegally altered.  To the extent that he intends to claim that Defendant altered the figures, he neglects to explain how this might have been accomplished.

that this explanation is pretextual. It is certainly possible that Defendant and TALX have chronically mismanaged employee wage access and reporting, and even, perhaps, done so in contravention of the law. Whether this is so, it seems, will be evaluated in the course of official investigation that appears to be underway, and the union grievance process. Importantly, however, an employer might be unwise, imprudent, unfair, or incompetent; unless it acted for an impermissible reason, however, its conduct is not actionable. Money v. Provident Mut. Life Ins. Co., 189 Fed. Appx. 114, 117 (3d Cir. 2006). Even illegal motivation does not necessarily equal illegal retaliation. Cf. EEOC v. Brown Printing Co., 752 F. Supp. 687, 690 (E.D. Pa. 1990). Moreover, it is not my role to correct Defendant's broad administrative deficiencies. As stated in a different context, a district court is not a "super- personnel" department that may second-guess the employer's judgment. Brewer v. Quaker State Oil Refining Corp., 72 F. 3d 326, 332 (3d Cir. 1995).

With that in mind, there is absolutely no evidence that Defendant singled Plaintiff out in misreporting or not correcting wage and earning information, or granting untimely access to necessary information, or that this conduct was in any way related to his complaint of discrimination. He has not come forward with any evidence at all suggestive of retaliatory motive, or that would tend to demonstrate that Defendant's usual approach to wage and unemployment benefits issues, which it followed with respect to Plaintiff, is a pretext to strike back at him for his internal grievance. Plaintiff's bare speculation, including his theory that Defendant illicitly arranged to mishandle other employees'

information in order to undermine this lawsuit, is wholly insufficient to overcome summary judgment. Moreover, although Plaintiff appears suspicious of Defendant's attempt to settle this litigation, such negotiations may not be considered in deciding the instant Motion. See Fed. R. Evid. 408. For these reasons, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.[10]

### C. False records and Forgery

Plaintiff purports to assert claims pursuant to 18 U.S.C. §§ 1001 and 495. These statutes, however, do not provide for a private right of action. Kelly v. Sapko, C.A. No. 03-368 , 2007 U.S. Dist. LEXIS 22683, at *3 (W. D. Pa. Feb. 23, 2007); Barnard v. Pavlish, 98-1 U.S. Tax Cas. (CCH) P50,366 (M.D. Pa. 1998). Plaintiff is, of course, free to bring his allegations to the attention of appropriate authorities, but Defendant is entitled to summary judgment on such claims raised in this lawsuit.

### CONCLUSION

In sum, under applicable standards, Defendant is entitled to the entry of judgment in its favor. Plaintiff's frustration with his situation, and his attempts to obtain redress, is palpable. I empathize with his sense, evidently deeply held,

---

[10] I am not asked to give the Bureau's factual findings preclusive effect; nor will I do so. Cf. Swineford v. Snyder County, 15 F.3d 1258 (3d Cir. 1994). As a matter of comity, however, I take note of the Bureau's decision and factfinding process. In the first instance, the referee found that "The claimant testified that his income varied and was not able to be determined at the time it was earned due to tip income not promptly reported to the claimant by the employer. The Claimant acknowledges that he knowingly underreported income in order to ensure that he received benefits to which he felt he was entitled. Over the 16 weeks involved in this claim, there were most substantial under-reportings of earnings." Although it is undisputed that Defendant was in possession of his pay stubs for the benefit weeks at issue, which he apparently claims would have corrected the Bureau's misapprehension, he failed to provide them to the Bureau.

that an injustice has been wrought.  I assure him, therefore, that I have carefully considered each of his arguments, and each of the facts properly presented. Today's Opinion and Order do not constitute a finding that Defendant "did nothing wrong"; nor do they constitute favorable treatment afforded an attorney, merely because he is an attorney.  Instead, I find today that under the record presented to the Court, and under applicable legal standards, Plaintiff has not established the existence of a genuine issue of material fact, and cannot obtain a remedy via this litigation.

An appropriate Order follows.

**ORDER**

AND NOW, this 14th day of February, 2008, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment (Docket No. [17]) is GRANTED.  The Motion to Strike (Docket No. [30]) is DENIED as moot.  The clerk shall close this matter forthwith.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose
Chief Judge, U.S. District Court